Filed 5/12/21  Villas at Santana Park HOA v. Fed. Realty Investment Trust CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| VILLAS AT SANTANA PARK HOMEOWNERS ASSOCIATION, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> FEDERAL REALTY INVESTMENT TRUST, <br><br> Defendant and Respondent. | H046073 <br> (Santa Clara County <br> Super. Ct. No. 17CV315739) |

Plaintiff  and appellant Villas at Santana Park Homeowners Association (Villas or plaintiff) is a non-profit corporation of 124 homes located next to Santana Row, a mixed-use development in San Jose owned by defendant and respondent Federal Realty Investment Trust (defendant).  Defendant intends to construct a large building next to the Villas homes.  After defendant received a construction permit for the building from the City of San Jose,[1] Villas sued for fraud, alleging that defendant's representatives had made false statements to its members about the size of the proposed development.

---

[1] In a separate case, Villas challenged, principally under the California Environmental Quality Act, the City of San Jose's issuance of a planned development permit for construction of the building.  In an unpublished opinion, a panel of this court affirmed the trial court's judgment in favor of the city.  (*Villas at Santana Park Homeowners Association v. City of San Jose* (Apr. 30, 2020, H045644).)

Defendant filed an anti-SLAPP motion to strike Villas's complaint under Code of Civil Procedure section 425.16,[2] which the trial court granted. Villas appeals the trial court's order. Villas asserts that this lawsuit, involving a private dispute between two commercial entities, does not implicate any free speech or petitioning rights and is not a SLAPP. Villas requests that we reverse the trial court's order.

For the reasons explained below, we affirm the trial court's order granting defendant's anti-SLAPP motion.

## I. FACTS AND PROCEDURAL BACKGROUND

A.    *Factual Background*

Defendant owns a large, mixed-use development known as Santana Row.[3] Following certification of a 1998 environmental impact report, much of the Santana Row development was constructed, but no building was built on a parcel that is the subject of the current dispute (referred to by the parties and herein as "lot 12"), which is adjacent to the Villas homes.

Between 1997 and 2007, representatives from Villas and defendant had meetings related to the Santana Row development, including discussions about how it would affect the Villas homes. The Santana Row development was also the subject of municipal hearings. As detailed further below, Villas alleges defendant's representatives made promises to its members that the development would not impair their sight lines and that structures on lot 12 would consist of single-family homes no more than three stories tall.

---

[2] "An anti-SLAPP motion seeks to strike a '[s]trategic lawsuit against public participation,' that is, a 'SLAPP.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2 (*Wilson*).)

[3] We draw the following facts from the complaint, the supporting declarations submitted by plaintiff in the trial court, and the documents submitted along with defendant's request for judicial notice which plaintiff does not dispute. We accept as true, evidence favorable to the plaintiff at the second step of the anti-SLAPP analysis for the purpose of resolving whether the trial court erred in its grant of defendant's special motion to strike. (See *Wilson*, *supra*, 7 Cal.5th at p. 887.)

Nevertheless, in 2015, defendant applied for a permit to build on lot 12 a single apartment building five-and-one-half-stories tall.

B. *Complaint and Defendant's Anti-SLAPP Motion*

In September 2017, Villas filed a lawsuit against defendant alleging it had committed the torts of "fraud and deceit" and negligent misrepresentation. Both tort claims are predicated on the same representations by defendant. Specifically, Villas alleges that on a number of occasions from December 1997 through January 2007 defendant promised to "Plaintiff and the individual concerned owners of homes within the Villas HOA that the newly proposed development of Santana Row would not affect home values, the lifestyle, the quiet enjoyment of the owners [*sic*] homes and the sight lines currently enjoyed by the residents."

According to the complaint, "[a]t that time the proposed development was very much in doubt" as it was opposed by many residents of the City of San Jose, and "[s]everal members of the City Council and [] the planning staff were similarly cautious" about recommending the development of Santana Row. The complaint alleges that "[t]o secure the support of the Plaintiff and the Villas owners, Defendant, and each of them, told the Plaintiff that sight lines would be protected, that there would not be a sea of tall buildings and that no building higher than 35 feet would be built within 30 feet of a zoned single family home."

The complaint lists 27[4] occasions between 1997 and 2007 when defendant made the alleged false statements. These include 10 municipal hearings before governmental bodies of the City of San Jose, as well as meetings and "get-togethers" that included at least two of defendant's representatives and Villas's representative, William Zahrt. In addition to these hearings and meetings, two statements appear in documents: a letter "to the Villas from Defendants" dated September 22, 2000 (which is attached to the

---

[4] Villas argues the claims involve 28 statements made by defendant. Based on our independent review, the complaint in fact alleges 27 statements.

complaint as an exhibit) and a December 1, 2006 "document and drawing depicting the preservation of the site line and the 35-foot maximum height" (which is also attached to the complaint as an exhibit).

The complaint alleges that, in reliance on defendant's promises, Villas and many of its members appeared before San Jose officials in support of the proposed Santana Row development. Villas alleges that, as a result of defendant's actions, it and each of its individual members have suffered damage to their "valuable property rights, including, but not limited to, loss of sight lines, loss of property values and loss of quiet enjoyment of their homes."

In response to Villas's complaint, defendant filed an anti-SLAPP motion to strike the complaint in its entirety. (Code Civ. Proc., § 425.16, subd. (b)(1).)[5] Defendant argued that Villas's claims were based upon protected statements that fall into at least one of the first three subclauses of section 426.15, subdivision (e) (§ 425.16, subd. (e)(1)-(3)), and that Villas had not established a probability of prevailing on its claims (§ 425.16, subd. (b)(1)) because the statements alleged in the complaint were absolutely privileged under Civil Code section 47, subdivision (b).

Defendant also filed in the trial court a request for judicial notice of documents related to the Santana Row development, including resolutions and ordinances approved by the City of San Jose.[6] The first document attached to defendant's request for judicial notice is a resolution from the San Jose City Council from June 1998 stating its intent to approve a zoning change to allow construction of the Santana Row development (then referred to as "Town and Country Village") and approving the final environmental impact report that had been prepared for the project pursuant to CEQA. Another exhibit

---

[5] Unspecified statutory references are to the Code of Civil Procedure.
[6] The trial court granted defendant's request for judicial notice in its entirety, and plaintiff does not challenge that ruling here. We previously granted defendant's unopposed motion to augment the record on appeal with these documents.

to the request for judicial notice includes an ordinance and development plan from July 1998 that rezoned the property for Santana Row as a "Planned Development." Others include 2001 ordinances and development plans to rezone the area within the Santana Row development, an ordinance and development plan related to Santana Row passed in March 2002, a December 2003 ordinance and development plan related to Santana Row effective in January 2004, and a December 2006 ordinance and development plan related to Santana Row that would take effect in January 2007.

Villas filed a written opposition to the anti-SLAPP motion and submitted two declarations in support. One was from William Zahrt (Zahrt Declaration), the president of Villas's board of directors and its long-time representative in dealings with defendant about Santana Row. Zahrt stated that he has owned a home in the Villas since September 1997. In the "early stages" of Santana Row's development, Zahrt had attended four informal meetings or "get-togethers" organized by defendant on December 10, 1997, February 4, 1998, April 8, 1998, and April 21, 1998, at which defendant's representatives "outlined their development concepts" and promised that the plans for Santana Row "would not affect the sight lines enjoyed by the residents." According to Zahrt, defendant's representatives "specifically stated [at these four meetings] that there would not be a 'sea of buildings' and that no building higher than 35 feet would be built within 30 feet of a zoned single family home" and that the structures "that would be constructed on what became Lot 12 would be single-family homes no taller than 3 stories."

Following these meetings, Zahrt attended several municipal hearings in 1998 on behalf of Villas related to planning and zoning for Santana Row. At these hearings, defendant did not refer to the promises it made to plaintiff or state it did not intend to honor them.

Zahrt continued to attend other informal meetings held by defendant, which occurred in 2000, 2001, 2002, 2003 and 2006, and he was "continually assured that Defendant would honor their commitments." In 2006, Zahrt received a document and

drawing from defendant's representative that confirmed defendant's promise to preserve "the sight line" and showed "three-story structures bordering the Villas." Zahrt continued to voice support for the Santana Row development and attended hearings in 2006 and 2007. Zahrt only learned in 2015, when defendant proposed development of lot 12, that defendant's promises made to induce plaintiff's support were false.

In addition to the Zahrt Declaration, Villas also submitted a declaration from Kathy Cheng, a Villas homeowner, whose home is located "on the property line" between the complex and lot 12. Cheng stated she attended four informal meetings arranged by defendant in 1997 and 1998, which correspond to the four meetings in the Zahrt Declaration, and other informal meetings with defendant over the years that are also referenced in the Zahrt Declaration and the complaint. She stated defendant made various promises, including that "the structures that would be constructed on what became Lot 12 would be single-family homes no taller than 3 stories." Cheng, like Zahrt, attended "the several hearings before the City Planning Department and City Council over the years prior to September 2015."

The trial court issued a tentative ruling in favor of defendant on its anti-SLAPP motion. At a hearing on the motion Villas argued that the anti-SLAPP statute did not apply, the defendant's free speech and petition rights were not implicated in this case, and the statute was "not intended for developers and applicants to city jurisdictions to get a get-out-of-jail card for what they say and for fraud." Defendant argued to the trial court that plaintiff, in its opposition brief and at the hearing, had set forth new and different allegations than the ones alleged in the complaint, but that regardless of the set of allegations "the outcome is the same." In response to defendant's contention that it was advancing new allegations, Villas denied that it had changed the allegations in the complaint. Villas stated it did not intend to amend its complaint and "[w]hat we said in the complaint is exactly true." Villas cited to the trial court the decision in *Lacher v.*

6

*Superior Court* (1991) 230 Cal.App.3d 1038 (*Lacher*), which it characterized as "directly on point."

C.      *Trial Court's Order Granting Defendant's Anti-SLAPP Motion*

On June 29, 2018, the trial court issued a written order granting defendant's anti-SLAPP motion.  The trial court found that defendant had met its initial burden under the anti-SLAPP statute of demonstrating that Villas's claims arise out of protected activity under section 425.16, subdivision (e)(2), because the alleged misrepresentations "were made in connection with an issue—the development of Santana Row—that was under consideration and review by legislative bodies."  The trial court rejected Villas's contention that defendant's misrepresentations were private in nature, reasoning that "[t]he overall thrust of the complaint challenges the activity of pursuing governmental approvals for the development of Santana Row, i.e., the complaint challenges the statements Defendant made to marshal support for, and quell objections to, development plans that were submitted [to] the San Jose City Council and Planning Commission."  The trial court rejected Villas's argument based on *Lacher*, because, although the case bore factual similarities to the current dispute, it did not involve the anti-SLAPP statute.  After addressing other arguments raised by Villas, the trial court found that defendant had met its threshold burden, shifting the burden to Villas to demonstrate success on the merits of its claims.

Turning to this step of the analysis under the anti-SLAPP statute, the trial court found that Villas could not meet its burden to show that the challenged claims were legally sufficient and factually substantiated, because defendant's statements were privileged under Civil Code section 47, subdivision (b).  The trial court concluded that

7

the absolute privilege under this statutory provision "bars Plaintiff's complaint." The trial court granted defendant's motion to strike the complaint in its entirety.[7]

In July 2018, based on its order granting defendant's anti-SLAPP motion, the trial court entered judgment in favor of defendant.

Villas filed a timely notice of appeal of the trial court's order and judgment.

## II. DISCUSSION

On appeal, Villas contends that the trial court erred in deciding that defendant met its threshold burden under the anti-SLAPP statute of showing that Villas's tort claims arise from defendant's free speech or petitioning activities in connection with a public issue. Villas argues its lawsuit involves private representations between "two commercial entities attempting to achieve a mutually profitable arrangement" and the "representations and resulting reliance did not have anything to do with public interest." Additionally, even assuming defendant's activities were protected, Villas asserts it has met its burden to show that there is a probability that it will prevail on the merits of the complaint's causes of action.

A. *Anti-SLAPP Statute*

Section 425.16, "commonly known as the anti-SLAPP statute, allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson*, *supra*, 7 Cal.5th at pp. 880–881.) The anti-SLAPP statute provides a "procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056 (*Rusheen*).)

---

[7] The trial court also denied defendant's request for attorney fees and costs pursuant to section 425.16, subdivision (c), finding that defendant failed to substantiate its request for fees. The trial court noted that defendant could obtain its fees through a future motion. In its opening brief, plaintiff states the trial court later awarded defendant $50,000 in fees plus certain costs which award "has been paid," although the briefing and order related to this award do not appear in the record on appeal. In addition, the trial court denied plaintiff's request for attorney fees since it did not prevail on the anti-SLAPP motion.

That remedy "authorizes a special motion to strike claims 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Wilson*, *supra*, at p. 884.) By its own terms, the anti-SLAPP statute is to "be construed broadly" in furtherance of its stated goals. (§ 425.16, subd. (a); *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321.)

1. First Step of the Anti-SLAPP Analysis

Courts evaluate an anti-SLAPP motion in two steps. (*Wilson*, *supra*, 7 Cal.5th at p. 884.) At the first step, the court examines whether the moving defendant has established " 'that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' " (*Ibid.*) The defendant's burden in the first step involves making "two related showings": "[c]omparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection. (See § 425.16, subd. (e).) And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims." (*Id.* at p. 887.) "At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected [citations.], not whether it has shown its acts are ultimately lawful." (*Id.* at p. 888.)

A defendant meets this burden by demonstrating that he or she has engaged in (1) " ' "protected activity" ' " under the anti-SLAPP statute, and (2) the plaintiff's allegations " ' "arise[] from" ' " that protected activity. (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 760 (*Laker*).) A claim arises from protected activity when that activity underlies or forms the basis for the claim. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062 (*Park*)). Courts must consequently distinguish "between activities that form the basis for a claim and those that merely lead to the liability creating activity or provide evidentiary support for the claim." (*Id.* at p. 1064.)

9

Relating to protected activity, section 425.16, subdivision (e), sets forth four categories of protected activity:  (1) "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"; (2) "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law"; (3) "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"; or (4) "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."[8]  (§ 425.16, subd. (e).)

"Consistent with the [anti-SLAPP] statute's purpose, its text defines conduct in furtherance of the rights of petition and free speech on a public issue not only by its content, but also by its location, its audience, and its timing.  (See § 425.16, subd. (e)(1) ['before a legislative, executive, or judicial proceeding']; § 425.16, subd. (e)(2) ['in connection with an issue under consideration or review by' a government entity]; § 425.16, subd. (e)(3) ['in a place open to the public or a public forum in connection with an issue of public interest'].)  Indeed, we have previously noted that the Legislature ' "equated a public issue with the authorized official proceeding to which it connects," ' effectively defining the protected status of the statement by the context in which it was made." (*FilmOn.com*, *supra*, 7 Cal.5th at pp. 143–144, italics omitted.)  "The common thread that runs through subdivision (e)(1) through (e)(3) is that each provision protects speech that contributes to the public discussion or resolution of public issues—a thread that also ties these provisions together with the statute's stated purpose of furthering

---

[8] The fourth clause of section 425.16, subdivision (e), is commonly referred to as the "catchall provision." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 144 (*FilmOn.com*).)  Defendant focuses its argument on the first three clauses and does not argue its statements are protected by the fourth.

'continued participation in matters of public significance.' (§ 425.16, subd. (a).)" (*Wilson*, *supra*, 7 Cal.5th at p. 900.)

"The first two clauses of subdivision (e) of section 425.16 'safeguard free speech and petition conduct aimed at advancing self government, as well as conduct aimed at more mundane pursuits' and 'all that matters is that the First Amendment activity take place in an official proceeding or be made in connection with an issue being reviewed by an official proceeding.' [Citation.] A defendant who invokes either subparagraph (1) or subparagraph (2) of subdivision (e) of section 425.16 'need not separately demonstrate that the statement concerned an issue of public significance.' " (*Laker*, *supra*, 32 Cal.App.5th at p. 764.) The moving defendant " 'need not prove that the challenged conduct is protected by the First Amendment as a matter of law; only a prima facie showing is required.' " (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 822.)

Where a pleaded cause of action includes allegations of both protected and unprotected activity, the allegations that arise from unprotected activity are "disregarded." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*); see *Laker*, *supra*, 32 Cal.App.5th at p. 772.) At the same time, allegations of protected activity that "are 'merely incidental' or 'collateral' are not subject to section 425.16." (*Baral*, at p. 394.)[9]

---

[9] Following *Baral*, we decline to employ the legal standard used by the parties in their briefing that focuses on the "gravamen" or overall "thrust" of plaintiff's claims, which was also applied by the trial court. As a panel of this court observed in *Laker*, the Courts of Appeal are divided on whether, after *Baral*, it is appropriate for courts to disregard allegations that do not constitute the "gravamen" of the plaintiff's cause of action. (*Laker*, *supra*, 32 Cal.App.5th at p. 772, fn. 19.) In *Laker*, this court agreed with the Court of Appeal in *Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1169 that *Baral* has eliminated the "gravamen" analysis, and we therefore do not employ it here. (*Laker*, at p. 772, fn. 19.)

### 2. Second Step of the Anti-SLAPP Analysis

If the defendant makes its threshold showing under step one of the anti-SLAPP analysis, the burden shifts at the second step to Villas to demonstrate the merit of the challenged cause of action by establishing a probability of success. (§ 425.16, subd. (b)(1); *Wilson*, *supra*, 7 Cal.5th at p. 884.) The California Supreme Court has described this second step of the anti-SLAPP analysis as a " 'summary-judgment-like procedure.' " (*Baral*, *supra*, 1 Cal.5th at p. 384.) "In deciding an anti-SLAPP motion, a court must at the second step ' "accept as true the evidence favorable to the plaintiff." ' " (*Wilson*, at p. 887.) "If the plaintiff is unable to demonstrate that his or her claim has at least minimal merit, then the trial court should deem the cause of action a SLAPP and should strike it." (*Laker*, *supra*, 32 Cal.App.5th at p. 760.)

### 3. Standard of Review

We review de novo the trial court's order granting defendant's anti-SLAPP motion. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park*, *supra*, 2 Cal.5th at p. 1067.) "In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Ibid*.)

With these principles in mind, we apply the anti-SLAPP statute to Villas's claims.

### B. *Application of the Anti-SLAPP Statute to Villas's Claims*

We first examine whether defendant has made out "a prima facie case that activity underlying a plaintiff's claims is statutorily protected." (*Wilson*, *supra*, 7 Cal.5th at p. 888.) The trial court here concluded that defendant met its initial burden under section 425.16, subdivision (e)(2), which applies to: "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative,

executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).) The trial court found that "the alleged misrepresentations were made in furtherance of Defendant's right to petition because they were made by Defendant to marshal support for, and quell objections to, development plans that were to be submitted, and were in fact presented to, the San Jose City Council and Planning Commission."

On appeal, Villas contends that defendant's statements are not statutorily protected because "the statements, promises and assurances on which Appellant's case are based were made privately and not to advance or further any action or matter pending before any judicial or municipal body and were made when no litigation was anticipated." Defendant continues to maintain that all the 27 statements Villas challenges fall within the parameters of section 425.16, subdivision (e)(2). Additionally, defendant contends the 10 statements made in municipal hearings also fall under the parameters of the first clause of section 425.16, subdivision (e)(1) and that all 27 statements are protected by section 425.16, subdivision (e)(3).

For each category of conduct, we must decide whether defendant has made "a prima facie showing that [its] conduct falls within one of the categories set out in section 425.16, subdivision (e)." (*Laker*, *supra*, 32 Cal.App.5th at p. 763.) Following *Baral*, we decline to adopt Villas's framework based on pleaded causes of action and instead focus on identifying the "allegations of protected activity, and the claims for relief supported by them." (*Baral*, *supra*, 1 Cal.5th at p. 396.) We separate defendant's statements made at municipal hearings from those made in other settings. (See *FilmOn.com*, *supra*, 7 Cal.5th at pp. 143–144.)

### 1. Statements Made by Defendant at Municipal Hearings

Paragraphs 6 and 7 of the complaint set forth defendant's statements that underly each of Villas's tort claims, including the promise that neighboring residents would not observe a " 'sea of tall buildings' " as a result of the Santana Row development.

13

Paragraph 8 of the complaint specifies the 27 occasions at which these statements were made. According to the complaint, defendant made 10 of the statements in city hearings on the Santana Row project: (1) "April 22, 1998 at a hearing held in the City of San Jose Council Chambers"; (2) "May 13, 1998 at a rezoning hearing in the Council Chambers"; (3) "May 27, 1998 at a Planning Commission EIR and rezoning hearing in the Council Chambers"; (4) "June 16, 1998 at a hearing in the Council Chambers"; (5) "June 30, 1998 at a hearing in the Council Chambers"; (6) "November 8, 2006 at a San Jose Planning Commission hearing"; (7) "November 29, 2006 at a San Jose Planning Commission hearing"; (8) "December 5, 2006 at a City Council meeting"; (9) "December 6, 2006 at a Planning Director's hearing"; and (10) "January 31, 2007 at a Planning Commission hearing."

Defendant contends these 10 statements made at municipal hearings fall under the parameters of the first clause of section 425.16, subdivision (e). We agree. In pertinent part, section 425.16, subdivision (e), states: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1).)

Villas does not challenge defendant's assertion that these planning commission and city council hearings constitute an "official proceeding," and we agree that they do. (See *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 272.)

In response to defendant's argument that its statements in the municipal hearings are a protected activity under 425.16, subdivision (e), Villas suggests that the complaint's allegations related to the city hearings are "incidental" or appear in the complaint only for context to "demonstrate the complete significant chronology of the development of Santana Row over the years." Villas argues that "[t]he *appearance* before the City Council was incidental to the gravamen of the Appellant's claim of fraud, deceit and

14

misrepresentation." (Italics added.) As the California Supreme Court explained in *Baral*, allegations of protected activity that "are 'merely incidental' or 'collateral' are not subject to section 425.16." (*Baral*, *supra*, 1 Cal.5th at p. 394.)

Based on our independent review of the complaint and Villas's statement in the trial court that it did not seek amendment of its complaint, we disagree with Villas's characterization of its claims as based only on defendant appearing at those hearings, rather than making statements at them. The complaint lists 10 statements related to city hearings that are predicate statements for its fraud claims.

In sum, we conclude that, as to defendant's alleged conduct at the 10 municipal hearings, defendant met its prima facie burden to show that the 10 statements it allegedly made constitute protected activity under section 425.16, subdivision (e)(1). The burden therefore shifts to Villas to demonstrate the merit of the claims by establishing a probability of success. (*Baral*, *supra*, 1 Cal.5th at p. 384.) Before turning to that question, we examine whether the remaining statements at issue in Villas's complaint— the other 17 statements made in private meetings or that appear in written documents— are protected activity under the anti-SLAPP statute.

### 2. Statements Made by Defendant Outside City Hearings

The remaining 17 statements, 15 of which appear to be oral statements made by defendant at various meetings it organized for the purpose of seeking Villas's support for the Santana Row development. Specifically, within paragraph 8 of the complaint and the Zahrt Declaration that Villas submitted as evidence in opposition to the anti-SLAPP motion, the following 15 non-hearing meetings are alleged

(1) "Dec. 10, 1997 at a Town and Country Village meeting conducted by Defendants"; (2) "February 4, 1998 at a Town and Country Village meeting conducted by Defendants"; (3) "April 8, 1998 at a Town and Country Village meeting conducted by Defendants at which meeting Defendants produced models of proposed buildings which demonstrated the guarantees that Defendants had made to induce Plaintiff as listed in

15

paragraphs 6 and 7 [of the complaint]"; (4) "April 21, 1998 at a Town and Country Village meeting conducted by Defendants at which meeting Defendants produced models of proposed buildings which demonstrated the guarantees that Defendants had made to induce Plaintiffs as listed in paragraphs 6 and 7 [of the complaint]"; (5) "October 28, 1999 at an update meeting conducted by Defendants for the Villas"; (6) "May 1, 2000 at a meeting conducted by Defendants for the Villas"; (7) "September 28, 2000 by [two of defendant's representatives] at a meeting for the Villas";(8) "October 25, 2000 at a meeting with [two of defendant's representatives]"; (9) "October 30, 2000 at a meeting at Lou's Village restaurant"; (10) "April 30, 2001 at a meeting at Lou's Village restaurant"; (11) "August 21, 2002 at a meeting at Defendant's offices"; (12) "March 22, 2003 at a reception hosted by Defendant at the Left Bank"; (13) "May 8, 2006 at a meeting hosted by Defendant at 3055 Olin Avenue"; (14) "May 15, 2006 at a meeting hosted by Defendant at 3055 Olin Avenue"; and (15) "August 21, 2006 at a meeting hosted by Defendant at Hotel Valencia."

In addition to statements made on these 15 occasions, the complaint also alleges statements made in two documents attached to the complaint: a letter "to the Villas from Defendants" dated September 22, 2000 (which is attached to the complaint as an exhibit) and a December 1, 2006 "document and drawing depicting the preservation of the site line and the 35-foot maximum height" (which is also attached to the complaint as an exhibit).

Defendant claims that all of these 17 statements fall within the ambit of section 425.16, subdivision (e)(2), because they concern the "pending applications to develop Santana Row, and the potential impact on adjacent property owners." Defendant further notes that it is undisputed that the "development of Santana Row was under review by the City when [defendant] allegedly made these statements" and "[i]n fact, the development of Santana Row was under almost continuous consideration by the City from 1998 through at least 2016."

16

As noted above, section 425.16, subdivision (e)(2) (hereafter section 425.16(e)(2)), protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" (§ 425.16(e)(2)). "By requiring the communication to be in connection 'with an *issue* under consideration or review' (§ 425.16, subd. (e)(2), italics added), the terms of subdivision (e)(2) make clear that 'it is insufficient to assert that the acts alleged were "in connection with" an official proceeding.' (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 867.) Instead, '[t]here must be a connection with an issue under review in that proceeding.' " (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620 (*Rand*).)

Section 425.16(e)(2) "appears to contemplate an ongoing—or, at the very least, immediately pending—official proceeding. Conversely, if an issue is not presently 'under consideration or review' by such authorized bodies, then no expression—even if related to that issue—could be 'made in connection with an issue under consideration or review.' " (*Rand, supra*, 6 Cal.5th at p. 627.) In *Rand*, the California Supreme Court held that a statement underlying a claim for promissory fraud was not protected under section 425.16(e)(2) because it was made "about two years before the renewal issue even came before the City Council." (*Rand*, at p. 627.) The Supreme Court stated that " '[U]nder consideration or review' does not mean any issue a legislative body may conceivably decide to take up months or years in the future. [The city attorney's] statement was not made at the time or on the eve of the renewal decision; it was made years before the issue came under review by the City Council. [The city attorney] did not even refer to the City Council's review process in his promise." (*Ibid*.)

Here, after engaging in de novo review of the evidence in the record and applying the proper presumptions, we conclude that the remaining 17 statements upon which Villas's tort claims are predicated fall under section 425.16(e)(2). Defendant has established that the issue of the development of Santana Row was being discussed in

official proceedings related to that development during the time period in which defendant made the statements.  For example, as alleged in the complaint and the Zahrt Declaration, there were numerous municipal hearings in 1998 related to the development plans for the Santana Row project, and four of the informal meetings alleged by Villas occurred in the months prior to those hearings.  Moreover, by Villas's own admission in its complaint and the evidence it marshalled to oppose the anti-SLAPP motion, all of these statements in late 1997 and in 1998 were made to garner support for the Santana Row development and "attempted to gain the support of Plaintiff before the City Agencies."

Villas appears to principally argue that the "private" nature of these meetings is dispositive and takes them outside the scope of section 425.16(e)(2).  We disagree.  While the location and audience are important factors in the anti-SLAPP analysis (see *FilmOn.com*, *supra*, 7 Cal.5th at pp. 143–144), the private nature of the conduct itself does not bar the application of section 425.16(e)(2).  That provision does not require the conduct to occur in a public setting or to be part of the "public record."  (See *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 371 [anti-SLAPP statute extends to private conversations]; *Contemporary Services Corporation v. Staff Pro. Inc.* (2007) 152 Cal.App.4th 1043, 1050, 1054–1055 [concluding that a "litigation update" e-mail sent from a president of a company who was named as a defendant to nine individuals who were actual or potential customers fell within the parameters of section 425.16(e)(2)]; cf. *Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1175 ["We therefore cannot say the Legislature intended to exclude private conversations from protection under the [anti-SLAPP] statute since the list of covered activities does not act to eliminate such conversations from such protection."].)

The critical inquiry is whether the statements alleged to have been made by defendant relate to an issue under active consideration by the city council or other municipal entity and in ongoing proceedings related to the development of Santana Row.

18

Based on the record, we conclude that the challenged statements did relate to a matter which was under contemporaneous public review. Villas's evidence, even accepting it as true, does not defeat defendant's prima facie showing that section 425.16(e)(2) applies.

We have also considered *Oakland Bulk and Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738 (*Oakland Bulk*), a case Villas describes as "particularly relevant." However, *Oakland Bulk* is factually distinguishable and does not support Villas's contention that defendant's statements are not protected activity. In *Oakland Bulk*, the First District Court of Appeal, Division 2, addressed an anti-SLAPP motion brought by the City of Oakland after it was sued by two entities for breaches of contract and torts related to a series of agreements about the development of the land at the site of the former Oakland Army Base. (*Id.* at pp. 741, 745.) In that case, plaintiffs' claims arose from a variety of allegedly wrongful acts by the City including "the City's refusals to cooperate with plaintiffs to pursue available funding for the project; to cooperate with [plaintiff]'s effort to obtain approvals from the Surface Transportation Board (STB); to issue permits, including a fence permit to secure the West Gateway; to use commercially reasonable efforts to execute the rail access agreement; to honor [coplaintiff]'s invocation of force majeure (the definition of which includes 'acts of the government, acts of the other Party') after the City's actions caused development delays. They also include private and public statements by City officials threatening to kill the project if plaintiffs do not comply with the illegal resolution banning coal." (*Id.* at p. 754.)

The Court of Appeal noted that the city, in defending its anti-SLAPP motion, "simply ignores plaintiffs' substantiated allegations, and replaces those allegations with its own version of facts to attempt to show the claims arise out of protected activity." (*Oakland Bulk*, *supra*, 54 Cal.App.5th at p. 755.) Addressing the multiple tort claims in particular, the court noted "that the City does not even attempt to analyze the conduct underlying any of plaintiffs' seven tort claims" and "[i]nstead, the City argues that 'each

19

tort claim . . . incorporates by reference all of these specific alleged instances of breach.' " (*Id.* at p. 758.) The court further decided that "while plaintiffs' tort claims (i.e., the fourth through tenth causes of action) do incorporate prior paragraphs of the complaint, the majority of the incorporated allegations of protected activity provide the context of the claims." (*Ibid.*) Here, by contrast, defendant has not ignored or recharacterized plaintiff's allegations but rather has correctly relied upon Villas's own allegations in analyzing the applicability of section 425.16(e)(2) to the statements alleged in the complaint. Therefore, defendant's anti-SLAPP motion does not suffer from the same infirmities identified by the Court of Appeal in *Oakland Bulk.*

Regarding the " 'arising from' test" that forms part of the first step of the anti-SLAPP analysis (*Laker*, *supra*, 32 Cal.App.5th at p. 766), we decide that defendant's statements also satisfy this standard. Here, the protected conduct—the 27 statements discussed above—are not merely "evidence" of the claim but rather form the basis of plaintiff's two tort claims. (See *Park*, *supra*, 2 Cal.5th at p. 1064.) The complaint specifically incorporates all the statements, including the 10 statements at the municipal hearings, as the predicate statements that underlie both the torts of deceit and negligent misrepresentation.[10]

---

[10] " 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) "The tort of negligent misrepresentation, [is] a species of the tort of deceit." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.) "The elements of a negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' Negligent misrepresentation does not require knowledge of falsity, unlike a cause of action for fraud." (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1252.)

For these reasons, we decide that defendant "has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected" under section 425.16(e)(2).[11] (See *Wilson*, *supra*, 7 Cal.5th at p. 888.) We now turn to the second step of the anti-SLAPP analysis.

### 3. Probability of Success on the Merits

"In the second step of the anti-SLAPP analysis, 'the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing.' (*Baral*, *supra*, 1 Cal.5th at p. 396.) The plaintiff must demonstrate this probability of success with admissible evidence." (*Laker*, *supra*, 32 Cal.App.5th at p. 768.)

Defendant contends that Villas has failed to carry its burden of showing a probability of success for two independent reasons. First, as found by the trial court, defendant states Villas cannot prevail on its tort claims because they are based on statements that are absolutely privileged under Civil Code section 47, subdivision (b). Second, defendant argues Villas failed to produce admissible evidence to support each element of its claims for "[f]raud and [d]eceit" and negligent misrepresentation, for example because the alleged statements were opinions rather than actionable misrepresentations, the complaint itself shows defendant did not misrepresent its

---

[11] Having reached the conclusion that the statements in plaintiff's fraud claims are protected under section 425.16(e)(2), we need not address defendant's additional argument that they are also protected under the third clause of section 425.16, subdivision (e) (see § 425.16, subd. (e)(3) ["in a place open to the public or a public forum in connection with an issue of public interest"].)

21

intention regarding the 35 foot height limit, and Villas produced no admissible evidence regarding the element of damages.

Turning to the absolute privilege under Civil Code section 47, subdivision (b) (hereafter Civil Code section 47(b)), the California Supreme Court has explained that "[s]ection 47 [of the Civil Code] establishes a privilege that bars liability in tort for the making of certain statements. Pursuant to section 47(b), the privilege bars a civil action for damages for communications made '[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate],' with certain statutory exceptions that do not apply to the present case. The privilege established by this subdivision often is referred to as an 'absolute' privilege, and it bars all tort causes of action except a claim for malicious prosecution." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 (*Hagberg*); see also *Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 333 [noting that the privilege "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution"].)

"By the terms of the statute, statements that are made in quasi-judicial proceedings, or 'any other official proceeding authorized by law' (§ 47(b)), are privileged to the same extent as statements made in the course of a judicial proceeding." (*Hagberg, supra,* 32 Cal.4th at p. 362.) "Any publication made in a city planning commission or city council proceedings is within the protection of that section [then codified as Civil Code section 47, subdivision 2] though the proceedings are not strictly judicial." (*Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 488 (*Pettitt*); see also *Cayley v. Nunn* (1987) 190 Cal.App.3d 300, 303 (*Cayley*) [stating "the privilege of Civil Code section 47, subdivision 2 applies to local city council proceedings"].)

"The absolute privilege attaches to any publication that has any reasonable relation to the action and is made to achieve the objects of the litigation even though published

22

outside the courtroom and no function of the court or its officers is involved. The publication need not be pertinent, relevant or material in a technical sense to any issue if it has some connection or relation to the proceedings." (*Pettitt*, *supra*, 28 Cal.App.3d at p. 489.) "To accomplish the purpose of judicial or quasi-judicial proceedings, it is obvious that the parties or persons interested must confer and must marshal their evidence for presentation at the hearing. The right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings. To make such preparations and presentations effective, there must be an open channel of communication between the persons interested and the forum, unchilled by the thought of subsequent judicial action against such participants; provided always, of course, that such preliminary meetings, conduct and activities are directed toward the achievement of the objects of the litigation or other proceedings." (*Id.* at pp. 490–491.)

Furthermore, the California Supreme Court has held that "[i]t is not required that the statement be made during the proceeding itself." (*Hagberg*, *supra*, 32 Cal.4th at p. 368; see also *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 781–783 [privilege extended to communications between private parties regarding whether the parties should urge a division of the Attorney General's to investigate a recording studio "preliminary to the institution of an official proceeding"].) "Any doubt as to whether the privilege applies is resolved in favor of applying it." (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529.)

If the challenged action falls within the litigation privilege, the trial court must grant an anti-SLAPP motion. (See *Rusheen*, *supra*, 37 Cal.4th at p. 1065.) In the anti-SLAPP context, the litigation privilege presents "a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.) "While the defendants bear the burden of proof on any affirmative

23

defense, [plaintiff] retains the burden to show, under the second step of the anti-SLAPP analysis, that he has a probability of prevailing on the merits of the claim." (*Laker*, *supra*, 32 Cal.App.5th at p. 769.)

Guided by the foregoing principles, we conclude that the 27 statements fall under the litigation privilege because they are directly connected to the proceedings before municipal entities examining the Santana Row project. For the reasons we have already explained, the 27 statements are connected to the ongoing development of Santana Row and are thus also " 'logically related to the [official proceeding].' " *Laker*, *supra*, 32 Cal.App.5th at p. 770.; see also *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5–6 [holding, in the context of a judicial proceeding, that "[b]ecause one purpose of the letter was to inform members of the association of pending litigation involving the association, the letter is unquestionably 'in connection with' judicial proceedings (§ 425.16, subd. (e)(2)) and bears ' "some relation" ' to judicial proceedings."].)

*Cayley*, *supra*, 190 Cal.App.3d 300, is instructive. In *Cayley*, the appellate court stated "the alleged slanderous statements were made during preliminary conversations while defendants were marshalling evidence and preparing for their presentation at the city council meeting" and "[t]herefore, defendants' statements cannot be considered irrelevant to the proceedings and they were directed toward the achievement of the objects of the proceeding." (*Id.* at p. 304)

Villas does not meaningfully distinguish *Cayley* or provide any authority for the proposition that the absolute privilege does not apply under these circumstances. Villas chiefly relies, as it did in the trial court, on *Lacher*, *supra*, 230 Cal.App.3d 1038. Villas acknowledges *Lacher* was decided before the enactment of the anti-SLAPP statute but argues the case is "evidence of the probability of success" of its suit against defendant. Villas points to the factual similarities of *Lacher*. In that case, plaintiffs had a home near a "residential development being built" and the homeowners sued the developer alleging

24

"the developer fraudulently induced their support and acquiescence to obtain the required governmental approval for the project." (*Lacher*, at p. 1042.) The developer made various promises to interested neighbors, who were primarily concerned with "protecting their views," including a promise that houses built along a street "would be limited to one story above street level." (*Id.* at p. 1044.)

While we agree the facts in that case are similar to the allegations Villas makes here, *Lacher* is not legally relevant to the application of the anti-SLAPP statute. *Lacher* considered various challenges to the adequacy of the complaint, such as whether the developer defendant owed a duty of care to the plaintiffs, whether the complaint sufficiently alleged reliance and causation, and the availability of certain statutory defenses. (*Lacher*, *supra*, 230 Cal.App.3d at pp. 1042–1043.) Notably—and fatal to the utility of Villa's reliance on it here—the court in *Lacher* did not consider or mention the anti-SLAPP statute, which had not yet been enacted. (See *Wilson*, *supra*, 7 Cal.5th at p. 883 [the anti-SLAPP statute was enacted by the Legislature in 1992]). Nor did the case mention or discuss the concept of the litigation privilege or discuss or apply Civil Code section 47(b) to the circumstances of that case. *Lacher* therefore has no relevance to any of the dispositive issues in this appeal.

In sum, we decide that Villas cannot carry its burden of establishing a probability of success on the merits because the absolute privilege of Civil Code section 47(b) protects defendant's statements that underlie the causes of action in Villas's complaint. Therefore, the trial court properly granted defendant's motion to strike the complaint under section 425.16.

## III. DISPOSITION

The June 29, 2018 order granting defendant's anti-SLAPP motion and the judgment appealed from are affirmed. Respondent is entitled to costs on appeal.

25

_____

                                  Danner, J.

WE CONCUR:

_____

Greenwood, P.J.

_____

Elia, J.

**H046073**
***Villas at Santana Park HOA v. Federal Real Estate Investment***